SARAH NUTT *v.* JAMES R. CUMING, Appellant, Impleaded with THOMAS KERRIGAN et al.; EDWARD L. CAREY, Respondent.

1. MORTGAGE — FORECLOSURE. In an action to foreclose a mortgage, the interests of parties become barred and foreclosed, not upon the entry of the judgment, but upon the sale and conveyance of the land. (Code Civ. Pro. § 1632.)

2. RELATION OF LIENS TO SURPLUS. Only liens in existence at the time of the sale and conveyance in a foreclosure action are transferred to the surplus moneys arising therefrom; and if at that time no lien exists, there is nothing which can be transferred to the fund.

3. LAPSE OF JUDGMENT LIEN BEFORE FORECLOSURE SALE — EXCLUSION FROM SURPLUS. If at the time of the sale in a mortgage foreclosure

action, to which a junior judgment lienor was a party, ten years have elapsed since such party's judgment became a lien, it is not payable out of the surplus, even though the ten years had not elapsed at the time of the entry of judgment in foreclosure.

4. EXECUTION AGAINST LAND AFTER FORECLOSURE JUDGMENT. A judgment in foreclosure, while final for all purposes of review, is in other respects interlocutory; and parties to the action, having judgment liens upon the property, may sell it upon execution, notwithstanding the judgment, prior to the foreclosure sale.

*Nutt* v. *Cuming*, 22 App. Div. 92, affirmed.

(Argued February 28, 1898 ; decided March 15, 1898.)

APPEAL by the defendant, James R. Cuming, from a final order of the Appellate Division of the Supreme Court in the first judicial department, entered November 17, 1897, reversing an order of Special Term affirming a report of a referee in surplus proceedings.

The facts, so far as material, are stated in the opinion.

*Henry Thompson* for appellant. If, without sufficient proof of such fact, the Appellate Division was warranted in its inference that the sale of the mortgaged premises under the final judgment of foreclosure and sale, entered January 13, 1892, was more than ten years after the recovery and docketing of the Cuming judgment (August 9, 1882), that fact alone did not warrant the Appellate Division in reversing the order of the Special Term and directing that the whole surplus moneys, as between Cuming and Carey, should be paid to the latter. (*Caswell* v. *Kemp*, 41 Hun, 434.) The action having been commenced, notice of *lis pendens* filed, the parties all brought before the court, and judgment having been entered within ten years from the recovery of the judgment, the right of Mr. Cuming to have his judgment satisfied out of the surplus could not be lost by the mere fact that the actual auction sale under the decree did not occur until more than ten years after the recovery of judgment, if such fact had been made to appear in the record of this appeal. (*Delafield* v. *White*, 19 Abb. [N. C.] 104; *Fliess* v. *Buckley*, 90 N. Y. 286; *People ex rel.* v. *Bacon*, 99 N. Y. 275; Code Civ.

Pro. § 1200; *Dempsey* v. *Bush,* 18 Ohio St. 376; *Lawrence* v. *Belger,* 31 Ohio St. 175; *Fort* v. *Litmer,* 31 Ohio St. 215.)

*William L. Clark* for respondent. The judgment obtained by James R. Cuming against Thomas Kerrigan, entered and docketed on the 9th day of August, 1882, ceased to be a lien upon the mortgaged premises at the expiration of ten years from that date. (Code Civ. Pro. §§ 1251, 1252; *Matter of Harmon,* 79 Hun, 226.) Not only must execution issue, but the sale must take place within ten years in order to preserve the lien of the judgment unless restrained by injunction or writ of error. (*Darling* v. *Littlejohn,* 12 N. Y. Supp. 205; *Floyd* v. *Clark,* 16 Daly, 528.)

HAIGHT, J. On the 9th day of August, 1882, the defendant Cuming recovered a judgment against one Thomas Kerrigan, which became a lien upon real estate subject to the lien of a mortgage theretofore executed, bearing date the 14th day of January, 1882. On the 1st day of October, 1891, an action was brought to foreclose the mortgage, which resulted in the entering of the usual judgment of foreclosure and sale on the 13th day of January, 1892. The sale of the property under the judgment did not, however, take place until December, 1896, and after the expiration of ten years from the entry of the Cuming judgment. The Special Term held that Cuming was entitled to have his judgment paid out of the surplus moneys arising on the sale. The Appellate Division reversed this part of the order, holding that the lien of the judgment had ceased to exist before the sale took place under the foreclosure judgment, and that, therefore, no lien in favor of Cuming was transferred to the surplus moneys.

It is now claimed that the foreclosure judgment having been entered before the expiration of the ten years from the entry of the Cuming's judgment the lien was, by operation of law, transferred to the surplus moneys that should arise upon the sale of the premises as of the day of the entry of the foreclosure judgment, and that from that time he was barred and foreclosed of all right, title, interest or equity of redemp-

tion in the mortgaged premises    We do not so understand the law.    The judgment of foreclosure first determined the amount due upon the mortgage.    It then provided for a sale of the premises at public auction  by a referee appointed for that purpose, who was directed to execute and  deliver to the purchaser a deed, and out of the moneys arising from the sale to pay the fees, expenses, taxes and allowance to attorneys, and then the amount due upon the mortgage.    The surplus arising from the sale it required to be paid over to the chamberlain of the city of New York, subject to the further order of the court.    It then adjudged " that the defendants and all persons claiming under them, or any, or either of them, after the filing of such notice of pendency of this action, be forever barred and foreclosed of all right, title, interest and equity of redemption in the said mortgaged premises *so sold* or any part thereof."  It will thus be observed that under the provisions of the judgment the right, title and interests of the defendants became barred and foreclosed, not upon the date of the entry of the judgment, but from and after the sale of the premises and the conveyance made thereunder.

The Code, after specifying the various steps necessary to be taken in the foreclosure of a mortgage, provides that " *A conveyance upon a sale*, made pursuant to a final judgment, in an action to foreclose a mortgage upon real property,  *  *  * is as valid, as if it was executed by the mortgagor and mortgagee, and is an entire bar against each of them, and against each party to the action who was duly summoned, and every person claiming from, through, or under a party, by title accruing after the filing of the notice of pendency of the action."  (§ 1632.)   Here the legislature gives to the conveyance the same force and effect that is given by the judgment. One is in harmony with the other.

Rule 64 of the General Rules of Practice provides that " On filing the report of the *sale* any party to the suit, or any person who had a lien on the mortgaged premises *at the time of the sale*, upon filing with the clerk where the report of

sale is filed a notice, stating that he is entitled to such surplus moneys or some part thereof, and the nature and extent of his claim, may have an order of reference," etc. It is the lien existing at the time of the sale that is transferred to the surplus moneys arising therefrom. If, at that time, no lien exists, there is nothing which can be transferred to the fund. Judgments over ten years old cease to be liens upon real estate, and, consequently, are not payable out of the surplus. (*Floyd* v. *Clark*, 16 Daly, 528; *Fliess* v. *Buckley*, 90 N. Y. 286; *I. & T. Nat. Bank* v. *Quackenbush*, 143 N. Y. 567; *Tufts* v. *Tufts*, 18 Wend. 621; *Graff* v. *Kips*, 1 Edwards Ch. 619; *Roe* v. *Swart*, 5 Cowen, 294.)

A mortgage upon real property may be foreclosed and the lands sold under the statute without an action. An action may be maintained to bar and foreclose all persons claiming an interest in or an equity of redemption, and for a sale of the lands for the purpose of paying the indebtedness due upon the mortgage. The chief object is the collection of the indebtedness, which can be effected only by a sale. A judgment entered in a foreclosure action is final for all purposes of review, but in other respects it is interlocutory. All of the proceedings for the sale, including the advertising of the notice and the confirmation of the sale, take place thereafter. The provision barring others of their interest in, or of their rights of equity of redemption in the mortgaged premises, of necessity relates to the final concluding act, that of a sale of the premises. Until that time the mortgagee or the owner of the equity of redemption may redeem, and persons having judgment liens thereon may sell upon execution, notwithstanding the judgment, but, as soon as the sale is made, confirmed, and conveyance delivered, that provision of the judgment becomes operative and of full force, and the parties to the action are forever thereafter barred and foreclosed of all their right, title, interest and equity of redemption.

The other questions involved were properly disposed of by the Appellate Division.

The order should be affirmed, with costs.

40

O'BRIEN, J. (dissenting).    The question involved in this appeal is whether the owner of the equity of redemption or a judgment creditor is entitled to surplus money arising from a sale of real estate under a judgment of foreclosure of a prior mortgage.    The referee and the Special Term have awarded the moneys to the judgment creditor, but the Appellate Division has reversed the order and awarded them to the owner of the equity of redemption.

The mortgage foreclosed was recorded January 14, 1882; the judgment was docketed August 9, 1882.    The present owner of the equity of redemption purchased the premises from the mortgagor and judgment debtor September 26, 1882, subject, of course, to the prior mortgage and judgment.    The plaintiff's action to foreclose her mortgage was commenced October 1, 1891, and final judgment was entered January 13, 1892.    It it said that the sale on this judgment did not take place until nearly five years afterwards; that is to say, in December, 1896, though there is no proof in the record of that fact, or any finding that concludes the present judgment creditor.

The ground upon which the learned court below reversed the Special Term and referee was that the judgment was more than ten years old at the time of the sale, though it was much less than that when the foreclosure action was commenced and the judgment entered.

It should be noted that the party to whom the surplus moneys were finally awarded by the court below, as owner of the equity of redemption, acquired his title subject to this very judgment and, presumptively, was allowed to retain sufficient of the purchase price to discharge this judgment so that in equity he has now in his hands the money of the debtor to pay the judgment and he is not only allowed to retain it, but gets the surplus besides.

This result certainly is not equity or justice, and the tendency of the mind is not to accept it very readily, but to inquire whether it is founded upon some fallacy or error.

It seems to me that it is and that it can be plainly pointed

out. It consists primarily in the assumption that the respective rights of claimants for the surplus money are to be determined by the existence of a technical statutory lien at the time of the sale which, as in this case, may have taken place years after the judgment which determined the action and the rights of the parties. There is no authority for that proposition, and it is not based upon reason or justice. There is no more reason or law for that than there is for saying that their rights depend upon the situation existing when the distribution of the surplus is made, or the proceedings for that purpose commenced, which likewise may be years after the sale. If the ten years have then elapsed, the lien of the judgment has ceased, and the creditor is not entitled to share in the surplus, if it be true that, under the same circumstances, it ceased at or before the sale. The limitation of ten years for the lien of a judgment upon land must have the same effect whether that period elapsed before the sale or after the sale and before the proceedings for distribution. If the right of the judgment creditor to share in the surplus is lost in the one case, it must be in the other. In both cases the statutory lien is lost, and, on the principle of the decision now before us, the right to share in the surplus must be lost also. It is not perceived, therefore, why the *sale* is fixed as the time when the rights of the parties are determined.

The sale is a mere executive or ministerial act, supplemental to and in execution of the judgment. It adjudges nothing that has not been adjudged before. It determines no rights affecting liens that have not been determined by the judgment. It simply carries the judgment into effect. Hence, the action and the judgment is what determines the rights of the parties. Any one who is a party to the judgment, having rights when it is entered, does not lose those rights by the lapse of time between the entry and the execution of it.

The main argument for depriving this creditor of all share in the surplus is that he should have issued execution on his judgment, and that he could have done that even after entry of the decree. If the judgment meant anything at all, it

adjudged that his lien was forever barred and foreclosed. That was the reason for making him a party; that was the relief demanded against him and secured by the judgment. The decree spoke as of the date of its entry, and not from a time five years later when the sale was had. Whatever effect a judgment has, attaches to the parties from the moment of its entry, and is not postponed to a time when it is executed. So the judgment of foreclosure adjudged that the real estate be sold free and clear from all junior liens, and it has the effect of barring them from the time it was perfected. When a defendant is thus barred and foreclosed, I take it to mean that he can do nothing more. He must stop where he is and await the distribution of the surplus. If he can do anything and everything after the judgment that he could before, then it simply had no effect upon him whatever. If this judgment creditor could issue execution after the judgment, then certainly the owner of a junior mortgage could bring suit to foreclose, the widow could proceed to have her dower admeasured and the heir at law could bring partition. Thus, the property of which the court had taken charge and had directed its own officer to sell, to the end that the proceeds might be distributed among all parties entitled to it, is assailed from every direction by a multitude of conflicting claimants who were parties to the action and bound by the judgment. Such unseemly proceedings with respect to property in the custody of the court by parties who had their day in court, would seem to me very much like a contempt of its authority and wholly inadmissible, after a judgment which barred their liens and remitted them to a claim for the surplus. So, in my opinion, it is not correct to say that junior incumbrancers, who were parties to the judgment, may nevertheless proceed, after its entry, to enforce their claims at law. If they can, then it follows that the judgment had not the slightest effect upon their rights. Moreover, when a statute says that the lien of a judgment ceases after ten years, the limitation refers to the land as such, and has no reference to surplus money.

My difficulty with this case is that it has been held, not

only that junior incumbrancers may· do this very thing, but
that they *must* do it or lose their liens.   This proposition is
urged as a reason for holding that the creditor in this case
had a remedy which he neglected to take, and it involves the
necessity of asserting that he was not barred by the judgment,
though it said he was in plain terms, but by the sale which was
five years afterwards.   Just the contrary to that has been
decided by this court as we shall see hereafter.   A proceeding
to distribute surplus moneys is a proceeding in equity governed
solely by equitable principles, and there are many cases where
a party may be entitled to share in the fund who has no statu-
tory lien whatever.   The case of a legacy chargeable upon the
land is a familiar example.   (*Delafield* v. *White*, 19 Abb. [N. C.]
105.)   Wherever the facts will warrant the filing of a bill in
equity to declare a lien on the fund the party may have the
same relief in proceedings to distribute surplus moneys.   (*Crom-
bie* v. *Rosenstock*, 19 Abb. [N. C.] 312 ; *N. Y. Life Ins. Co.*
v. *Mayer*, Id. 92 ; affd., 108 N. Y. 655.)   Of course, if a
judgment creditor whose judgment is more than ten years old
at the time of the sale cannot share in the surplus, he cannot
bid at the sale upon the basis of his judgment, since he has no
lien.   The principle decided in this case must produce another
very curious result, and that is that an insolvent owner of
the equity of redemption, who owes thousands of dollars to
judgment creditors, must, nevertheless, be awarded the sur-
plus moneys if he can show that at the time of the sale more
than ten years had elapsed since the docketing of the judg-
ments.   Such a proposition must disturb our sense of justice,
and it is not helped much if we say that the creditor may pur-
sue the debtor afterwards in some other way to reclaim what
ought to have been awarded to him on the distribution.   Such
an unreasonable and unjust result is avoided by the applica-
tion of a very plain principle, which seems to me to control
this case.   An action to foreclose a mortgage is in the nature
of an action *in rem* in a court of equity.   The purpose of it is
to subject the land to sale and to distribute the proceeds to the
parties entitled to it.   It is a favorite doctrine of that court

that when it has once acquired jurisdiction of the parties and the subject-matter of the action it will not permit a right or a lien, whether legal or equitable, to be lost by the lapse of time, however long, between the commencement of the action and the final termination of all the proceedings. It seizes upon every right or claim as it exists when the jurisdiction attaches, and holds it to the end for the benefit of the proper party. This rule has been ignored in the order now under review. When the court took jurisdiction of the property and of this creditor with his judgment, it found a perfect lien existing which entitled him to share in the proceeds of the sale. That lien was as much the subject of its care as that of the prior mortgage. It could preserve that lien and transfer it to the proceeds of the sale, just as well as it could that of the mortgage. The lien not only existed when the jurisdiction attached, but when the decree was entered, and for long after. But notwithstanding all this it is now contended that equity was not competent to save the lien from destruction by the mere lapse of time, and so it was lost; that the creditor made a mistake in trusting to the all-powerful arm of equity, and that he should have called in to its aid the purely legal process of execution during the pendency of the proceedings and before the ten years had expired, though a court of equity had full charge of every interest in the case. I cannot believe that this is law, and I prefer to adhere to the doctrine that equity grasped the lien and kept it alive upon the proceeds as it existed on the land when it took jurisdiction of the case.

If these were simply my own views, I would have much less confidence in them, since my brethren think otherwise; but they are sustained, as it seems to me, by the highest authority. In *Emigrant Industrial Savings Bank* v. *Goldman* (75 N. Y. 127) this court, speaking by CHURCH, Ch. J., dealt with the case of a statutory lien supposed to have become dormant by the lapse of time, in a proceeding for the distribution of surplus money. It is there distinctly held that junior liens, cut off by the foreclosure, cease when the judgment is entered; that the statute which provides that a lien shall cease after a

·specified time, refers to the lien on the land *as such*, and has no reference to surplus moneys; that the lien which the statute restricts and is thus cut off by the judgment is reduced to a right to the surplus moneys.

In *Caswell* v. *Kemp* (41 Hun, 434) there was a controversy with respect to surplus money arising on a sale of land in partition. The creditor who claimed to share in it had a judgment more than ten years old at the time the judgment in partition was entered, but it appeared that when the suit was commenced that period of time had not elapsed. The referee and the Special Term held that the lien of the judgment ceased after ten years and that the creditor could not share in the surplus, but the General Term reversed the order and held that he could, for the reason that the interests of all the parties must be determined with reference to their rights as they existed when the action was commenced, and that the lien of the judgment was preserved though the action was continued beyond the ten-year limit.

If there is any distinction between a claim for surplus money in partition and foreclosure cases I am unable to comprehend it. The question in both cases is whether the right to share in the proceeds of the sale is lost after the lapse of ten years. The case of *Dempsey* v. *Bush* (18 Ohio St. 376; approved in 31 Ohio St. 175, 215) involved the very question in this case and is instructive. The action was to foreclose a mortgage. The defendants were judgment creditors, and the statutory lien of the judgments had ceased from lapse of time. The question was whether, notwithstanding that circumstance, they were not entitled to share in the surplus moneys. The court, in dealing with the objection that the lien of the judgments had ceased, used the following language :

."The suit has, in equity, performed the same office as respects the judgments, which would have been performed by sale on execution had that form of process been available and resorted to. The object of the suit, from its commencement, was to subject the land to sale for the benefit of the parties; and it would be exacting a vain thing of a judgment creditor

to require him, pending the suit, to make an ineffectual attempt by execution to accomplish the object for which the suit was being prosecuted."

" The action is a proceeding in equity to enforce the payment of judgments and mortgages from the land, and in distributing the moneys resulting from its prosecution it seems to us no good reason exists in equity why a judgment creditor, who was properly made a party while his judgment was alive, should lose his right to share in the distribution by the omission to issue execution which, under the state of the title, could not have resulted in the sale of the land."

" The nature and object of the suit was the execution and enforcement of the liens of all the parties, and when properly and successfully resorted to it may well be held to supersede the necessity of other modes of execution."

It is said that the surplus money in this case was land. It was not land in fact, as every one knows, but only treated as such in a certain sense and for certain purposes. It was a case where there was what is known as an equitable conversion of land into money through the judgment of a court of equity which enforced a power of sale in a mortgage, but the money in equity is for certain purposes treated as land. The principle that underlies all this doctrine is the rule that equity regards that as done which ought to be done. It furnishes no support for the decision in this case, but on the contrary is opposed to it. An equitable conversion of land into money is worked in various ways. It is frequently accomplished under the provisions of a will, and has been well defined as that change in the nature of property by which, for certain purposes, real estate is considered personal and personal estate as real, and transmissible as such. (3 Pom. Eq. Juris. § 1159.) This rule of equity was developed to prevent, but never to promote, injustice. The conversion is sometimes deemed to have been effected at the death of the testator, but whenever land upon which legal liens exist is converted into money by operation of a judgment the lien will follow the fund just as it existed on the land itself when the judgment was rendered.

In judgments declaring the construction of a will containing an imperative power of sale, the execution of that power which works the conversion is often directed in the decree by a judicial sale of the land. If the decision in this case be sound, it must follow that a creditor who had acquired a lien on the land by judgment, before the death of the testator, loses his lien by the expiration of the ten years, or whatever the statutory period may be, though the time expired after the judgment but before the sale, and this, too, although, as in this case, there was no possible way by which he could replace it. It is so much more reasonable and just to hold that in all such cases the statutory lien upon the land, as such, is transformed by the judgment into an equitable lien upon the fund, that it is difficult to assent to the narrow and technical rule adopted in this case. If the lien in such cases will not follow the fund, but the creditor must still in some way keep it alive on land which the court has taken charge of and directed to be sold, the creditor must frequently suffer from the operation of a rule that has so little of substance to commend it.

The notion that the right of a judgment creditor to share in the surplus arising upon foreclosure of a mortgage is lost, simply because ten years have elapsed before the sale, but after the judgment, has no foundation in reason and no support in authority. I have attempted to show that both reason and authority are against it, and, being of this opinion, I am constrained to dissent from the conclusion expressed in the prevailing opinion.

The order appealed from should be reversed and that of the Special Term affirmed.

HAIGHT, J., reads for affirmance; PARKER, Ch. J., MARTIN and VANN, JJ., concur; O'BRIEN, J., reads for reversal, and BARTLETT, J., concurs; GRAY, J., absent.

Order affirmed, with costs.