## MARSHALL v. UNITED STATES TRUST CO. et al.

(Supreme Court, Appellate Division, First Department.   April 15, 1904.)

1. WILLS—CONSTRUCTION—MORTGAGES—PAYMENT BY EXECUTORS—LIFE ESTATES—CREDITORS OF HEIRS—FRAUDULENT CONVEYANCES.

Testatrix conveyed property to her son for life, remainder to his heirs, if any, otherwise to be divided according to testatrix's last will, on certain conditions, one of which was that the son should have no power to sell, mortgage, or otherwise incumber the property.  By testatrix's will she directed her executors to sell certain other property, and with the proceeds pay a mortgage on the property conveyed to the son, whether the same was owned by testatrix at her death or should have been transferred to her son, "but not otherwise."  The son transferred his interest in the property for a term of years, which term became part of the assets of a firm of which the son was a member.  The firm failed, after which the son notified the executors not to pay off the mortgage on the property, whereupon the same was foreclosed, and the property purchased by the executors with funds belonging to the estate.  Held, that the executor's compliance with the son's request was not a combination to defeat the claim of judgment creditors of the son, and was not fraudulent as to them.

2. SAME—MORTGAGES—FORECLOSURE—LIEN—EFFECT.

A mortgage on real estate conveyed by testatrix to her son for life was a first lien on the property.  In an action to foreclose the same, judgment creditors of the son were made parties, and failed to defend on the ground that testatrix's executors were bound to pay the mortgage under a provision of her will, whereupon the entire property, including the son's life estate, was decreed to be subject to the mortgage, and was ordered sold to pay it.  Held that, testatrix's executors having purchased the property at sale, acquired an absolute title thereto, freed from the life estate and the claims of the son's creditors, under Code Civ. Proc. § 1632, providing that a conveyance under a final judgment in an action to foreclose a mortgage on real estate vests in the purchaser the same estate that would

have vested in the mortgagee if the equity of redemption had been foreclosed, and is conclusive as against each party to the action who was duly summoned, etc.

Appeal from Special Term, New York County.

Action by Charles C. Marshall against the United States Trust Company and others, individually and as executors of the estate of Mary Flanagan, deceased. From a judgment in favor of plaintiff (86 N. Y. Supp. 617) defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Edward W. Sheldon, for appellants.
John M. Harrington, for respondent.

INGRAHAM, J. By this action the plaintiff, a judgment creditor· of the defendant William C. Flanagan, seeks to have his judgment against the defendant Flanagan established as a lien upon a life estate in certain real property which had vested in Flanagan, the title to which is now held by the defendants the United States Trust Company and James J. Williams, as executors and trustees under the last will and testament of Mary A. Flanagan, deceased. There is no substantial dispute as to the facts. The property in question was owned by the appellants' testatrix prior to the 19th day of March, 1895. On that day she executed her will, by which she directed her executors to sell a certain parcel of land on Mott avenue, to invest all moneys received therefrom, and to pay the net income of all her property, and of all bonds, mortgages, and other investments, to her son during his life. The said will also contained the following provision:

"Twentieth: I empower my said executors to pay off any mortgage on my real estate at Avenue B and Fourteenth Street with any funds which they may have in their hands from the sale of any other portion of my estate and for said purpose to sell or dispose of for cash any other property in their hands."

Subsequent to the execution of this will, and on the 10th day of November, 1896, Mary A. Flanagan executed an instrument by which she granted and released unto William C. Flanagan, the party of the second part, a lot on land on the southwest corner of Fourteenth street and Avenue B—

"For and during the term of his natural life, with the powers and subject to the provisions hereinafter limited, declared and expressed concerning the same. First, that the said party of the second part shall have the power to receive the rents, issues, and profits of said premises during the term of his natural life. Second, that said party of the second part shall during the term of his natural life make and do any and all repairs upon said premises in good and sanitary condition, pay all taxes, Croton water rents, and assessments which may be made or levied upon said premises, and shall comply with any and all ordinances of the city of New York, and perform any and all directions or orders of the board of health, fire, or other department of said city which shall be empowered by law to make the same. Third, should said party of the second part die leaving him surviving issue, or issue of a deceased child or children, then said premises shall be and become the property in fee of said issue per stirpes, and not per capita. Fourth, should party of the second part die intestate and leave a widow him surviving, but no issue or issue of a deceased child or children, then said widow shall be entitled to one third part of said property. Fifth, should said party of the second part die intestate, leaving him surviving no widow or issue, or issue of a deceased child or chil-

dren, then said premises are to revert to and belong and be disposed of as part of the estate of the party of the first part, and to be distributed in accordance with the last will and testament, if any, of the said party of the first part. Sixth, said party of the second part shall have no power or authority to sell, mortgage, or otherwise encumber, or suffer to be sold, mortgaged, or encumbered, any part of said premises."

This instrument was recorded in the office of the register of the city and county of New York on December 8, 1896. At the time of the execution and delivery of this instrument the premises affected thereby were subject to the lien of a mortgage to secure the payment of the sum of $12,000 on the 4th day of July, 1896. Subsequently, and on the 20th of November, 1896, the appellants' testatrix executed a codicil to her last will and testament, whereby she directed her executors to sell her Mott avenue property as provided in the eighth clause of her will. The said codicil also contained the following provision: ·

"Fifth. I hereby direct my executors hereinafter named to pay out of the moneys realized upon the sale of my property upon the easterly and westerly sides of Mott Avenue any mortgage upon the premises situated on the southwest corner of Avenue B and Fourteenth Street, whether the same be owned by me at the time of my death or shall have been transferred to my said son, but not otherwise."

Mary A. Flanagan died on December 15, 1896, and the will and codicil were admitted to probate by the surrogate of the city and county of New York as a will of the real and personal property, and letters thereon were issued to the appellants as executors. She died seised of the Mott avenue property, which the appellants have sold as directed by the will and codicil. On April 14, 1897, the defendant Flanagan leased the Avenue B property, in which he had a life estate under the instrument before described, to one Mullen, for the term of· 10 years from May 1, 1897, and on April 29, 1897, Flanagan and Mullen formed a copartnership. By the copartnership agreement, the said lease from Flanagan to Mullen was to become an asset of the copartnership. The said copartnership was unsuccessful, and failed in business, and judgments were obtained by the plaintiff's assignor and others against Flanagan and Mullen during the year 1897. In the month of January, 1898, the executors and trustees under the will sold the Mott avenue property belonging to the estate of the testatrix, and received therefor $43,725, of which, after making certain payments directed by the will, there remained in their hands an amount in excess of the $12,000 required to pay the mortgage on the Avenue B property in which the defendant Flanagan had been granted a life estate.

The defendant Flanagan, who was called as a witness for the plaintiff, testified that he consented to have the mortgage upon the premises, in which he held a life estate, foreclosed. Mr. Fox testified that he acted as attorney for the defendant Flanagan; that he met the attorney for the trust company, and told him not to pay the mortgage of $12,000 on the Avenue B property, on the ground. that the defendant Flanagan had no interest in the property, and that the mortgagees might foreclose and let the property be sold under foreclosure; and that this advice was given at the request of Flanagan. The at-

torney for the trust company testified that Mr. Fox, as Flanagan's attorney, requested the trustees not to pay off this mortgage; that he stated that Flanagan had parted with his interest in the property; that by certain copartnership articles with Mullen the lease had become copartnership property, and that judgments had been obtained against both Flanagan and Mullen, and that, as Flanagan had no further interest in the property, the trustees could not under the will pay off the mortgage; that, in consequence of this notice from Flanagan's attorney, the trustees did not pay off the mortgage, whereupon an action was commenced to foreclose the mortgage, a judgment of foreclosure and sale entered, the property sold thereunder, and purchased by the appellants as trustees under the will of Mrs. Flanagan, who received a conveyance of this property from the referee under the judgment of foreclosure, and paid for the property out of the money of the estate in their hands which they held as in trust under the provisions of the will. The appellants subsequently sold this Avenue B property, which they had purchased at the foreclosure sale on the 28th of February, 1899, for the sum of $21,000, receiving upon such sale $5,000 in cash, and a bond of the purchaser secured by a mortgage for $16,-000. Subsequently the said mortgage and interest was paid to the said executors.

The court below found that "said defendant executors and trustees, at the request of the defendant William C. Flanagan, and with intent to defeat the collection of said judgment now owned and held by plaintiff, and in violation and disregard of the directions contained in the last will and testament and codicil thereto, and in violation and disregard of the rights and interests of said Flanagan's creditors, including plaintiff's predecessors in title, failed, neglected, and refused to pay off said mortgage to said Charles Kinnen upon the said premises situated on the southwest corner of Fourteenth street and Avenue B, and suffered the same to be foreclosed, and bought in the said premises as hereinbefore more fully set forth"; that "the funds of the estate of said Mary A. Flanagan, deceased, including the moneys arising on the sale by them of said Avenue B and Fourteenth street property, have been intermingled in the hands of defendant trustees; that from the fund of $15,817.32, the income of which is applicable to the payment of plaintiff's judgment against the defendant William C. Flanagan, as hereinbefore set forth, income has been received by the defendant trustees as follows," which income amounts to $531.91.

As conclusions of law, the court held:

"(1) That as between the defendant executors and trustees and the defendant Flanagan, upon the said purchase with funds of the said trust estate on the said foreclosure sale by the defendant executors and trustees of the premises situated on the southwest corner of Fourteenth street and Avenue B in the city of New York, the said defendant William C. Flanagan, by virtue of his interest under the said deed and the direction of the said codicil to pay off the said mortgage on the property, became restored to an estate for the term of his natural life in the said premises, subject to certain deductions properly chargeable against said life tenant in the premises. (2) That, upon the said sale of the said premises by the defendant executors and trustees to Harris Mandelbaum and Fisher Lewine, the defendant William C. Flanagan became the owner of an estate for the term of his natural life in the fund of $21,000, as representing his interest in the said premises before foreclosure

under the said deed to him, taken together with his right under the said will and codicil to have the mortgage thereon paid off, subject to certain deductions hereinafter mentioned properly chargeable against said life tenant in the premises. * * * (6) That $15,817.32 is the amount of the fund to which said defendant Flanagan's life estate now attaches in the premises. (7) That the plaintiff's preferential lien upon the income of the said fund of $15,817.32 attached at the commencement of this action on November 25, 1902, and that plaintiff was not bound to join any other creditor as a party to this action. (8) That the plaintiff should be paid out of the interest, income, issues, and profits of said fund of $15,817.32 the amount remaining unpaid on his judgment, to wit, $615.19, together with interest thereon from the 28th day of October, 1897, and the costs of this action."

And the defendant trustees were ordered and directed to pay the net income realized by them upon the said fund since the commencement of the action, and to pay as the income is received, to the plaintiff or his attorney, during the term of the natural life of the defendant Flanagan, until the money payable to the plaintiff herein should have satisfied the judgment; and the defendant trustees were enjoined and restrained from paying the defendant Flanagan, or to any one except the plaintiff or his attorney, any part of such net interest, income, issues, and profits arising from the said fund of $15,817.32 during the term of the natural life of the defendant Flanagan, until the moneys payable to the plaintiff as directed should have been fully paid and satisfied; and judgment was entered in accordance with this direction, and from this judgment the defendant trustees appeal.

By this action the plaintiff seeks to have applied to the payment of his judgment the interest of the judgment debtor in this Avenue B property. By the grant to the judgment debtor he became the owner of an estate for life in the Avenue B property, subject to a mortgage of $12,000, and interest thereon. As such life tenant, he was required to pay taxes, assessments, and charges upon the property. That life estate undoubtedly became property in his hands to which the lien of a judgment would attach, and it was subject to the payment of his debts. The fifth clause of the codicil to Mrs. Flanagan's will directed her executors to pay, out of the money realized upon the sale of the Mott avenue property, any mortgage upon the premises in question, if she owned the property at the time of her death, or if it had been transferred to her son. It was not their duty to pay until they had realized sufficient money out of the sale of the Mott avenue property. The court found that during the month of January, 1898, the executors sold the Mott avenue property belonging to the estate, as directed by the eighth clause of the will, in several lots or parcels, for sums amounting in the aggregate to $43,725. Just when the money was received upon this sale does not appear. On the 14th day of April, 1897, before the Mott avenue property had been sold, Flanagan had leased the Avenue B property to Mullen, as tenant for 10 years from May 1, 1897, at a yearly rent of $2,200 for the first five years, and $2,300 for the remainder of the term; and on the 29th of April, 1897, Flanagan and Mullen entered into a copartnership agreement to conduct a restaurant and saloon business upon the premises in question. It was agreed that the lease of Flanagan to Mullen of the premises should become copartnership assets. This copartnership was to continue for 10 years, the term of the lease.

Mullen contributed the sum of $1,000 in cash and his experience in the business, and Flanagan contributed $1,500 and the rents, issues, and profits arising from the said premises leased. It was also agreed that the condition of the lease as to the payment of the rents by Mullen should become null and void, and said rents should become copartnership property, notwithstanding the condition expressed in said lease for the payment of rent, and that the same was to be used, laid out, and employed in common between them for the management of the said restaurant and saloon business; and it was further agreed that "all such gains, profits and income shall come, go out or arise for or by reason of the said trade or joint business as aforesaid, the rents from the said premises shall be from time to time, during the said term, equally and proportionately divided between them, the said copartners, share and share alike"; and also that all of such losses that shall happen in the said joint trade should be paid and borne equally and proportionately between the partners.

By the lease to Mullen and the copartnership agreement, this property, for the term of the lease, undoubtedly became copartnership property, and this was the condition of the property when the duty devolved upon the trustees to pay off the mortgage which was then upon the property. In the meantime the business had been unsuccessful. The firm had failed, and judgment had been obtained against the copartners. The lease, however, for the term of 10 years, was copartnership property, and subject to the debts of the copartnership. The direction in the will of Mrs. Flanagan which then became operative was to pay this mortgage, "whether the same be owned by me at the time of my death or shall have been transferred to my said son, but not otherwise"; and this condition existed when the trustees were directed by Flanagan not to pay the mortgage, as the condition contemplated by the will did not then exist. It is not entirely clear that this direction to pay the mortgage became operative. Prior to making this codicil, Mrs. Flanagan had granted the estate to the defendant Flanagan for life, with remainder to his issue, and with a reversion, in the event of his dying without issue and unmarried, to her estate. It is clear that at the time this provision of the will became operative the premises were not owned by her and had not been transferred to her son. His interest in them was simply a life estate, with remainder over, and he had transferred his interest in the property for a term of 10 years. When the will was made, this grant of the property was in existence, and this limitation upon the direction of the executors to pay the mortgage upon the property must be read in connection with the condition in which the property stood at the time the will was executed. Mrs. Flanagan could have contemplated that by the death of her son before her, without issue and without having been married, the property would revert to her, and at the time of her death be a portion of her estate; but it is not clear that she intended that her executors should pay off that mortgage regardless of the condition of the property at the time of her death, or the interest that she should own or that her son should have in it at that time; and I do not think that, because these trustees, acting upon a notice received from the son's legal adviser that the situa-

tion was such as was not contemplated by the will, and that therefore they were not justified in paying the mortgage, their failure to pay the mortgage can be fairly said to be the result of a combination to defeat the collection of the plaintiff's judgment, and in violation and disregard of the directions contained in the will and codicil, and in violation and disregard of the rights and interests of Flanagan's creditors, including plaintiff's predecessors in title.

The mortgage not having been paid, the mortgagee commenced proceedings to foreclose it, alleging nonpayment. To that action the trustees and Flanagan and the holder of the plaintiff's judgment and the other judgment creditors were parties. The mortgage was a lien upon Flanagan's interest in this property, he having a life estate therein; and by the judgment in the foreclosure action it was decreed that the mortgage was a lien upon the property, and that the property should be sold to satisfy the mortgage. Whatever rights Flanagan had in that property, and whatever rights or interest the plaintiff, as Flanagan's judgment creditor, had therein, were subject to the mortgage; and when, by the judgment in the foreclosure action, it was determined that the property should be sold and conveyed to the purchaser upon the sale, it was the plaintiff's as well as Flanagan's interest in the property that was sold, and there passed to the purchaser at that sale an absolute title to the property, discharged of all claim by either Flanagan or the plaintiff or the owner of the plaintiff's judgment therein. It is true that the executors became the purchasers at the sale under that judgment; but they then purchased Flanagan's interest and the plaintiff's interest in the property, and the sum realized on that sale stood in lieu of the property itself, and the purchaser at the sale acquired a valid title, discharged of all claim that Flanagan or his issue, or those claiming under him who were parties to the action, were entitled to under the grant.

Section 1632 of the Code of Civil Procedure provides that—

"A conveyance upon a sale made pursuant to a final judgment in an action to foreclose a mortgage upon real property vests in the purchaser the same estate only that would have vested in the mortgagee if the equity of redemption had been foreclosed. Such a conveyance is as valid as if it was executed by the mortgagor and mortgagee, and is an entire bar against each of them, and against each party to the action who was duly summoned, and every person claiming from, through or under a party, by title accruing after the filing of the notice of the pendency of the action, as prescribed in the last section."

The conveyance by the referee to the executors and trustees, therefore, was, by force of the statute, an entire bar to any claim of the plaintiff, as a judgment creditor of Flanagan, in and to any part of this property purchased and conveyed under the judgment, and there vested in the appellants an absolute title to the property, discharged of all claim by Flanagan or any one claiming under him who was a party to the action. These parties were all before the court. If the executors were bound to pay this judgment and thus release the property from the lien thereof, either Flanagan or those claiming under or through him could in that action have asked for a judgment requiring the executors to pay the mortgage, and thereby have freed the interest of their judgment debtor from the lien of the mortgage. No such application was made, and I think it clear that the title of

the trustees to this property could not be subjected to any claim of Flanagan or any one claiming under him who was a party to that action and whose interest in the property was conveyed by the referee to the appellants.

The authorities sustain this conclusion. In Rector, etc., Christ P. E. Church v. Mack, 93 N. Y. 488, 45 Am. Rep. 260, it was said:

"The effect of the foreclosure deed, therefore, as determined by the statute, is to vest in the purchaser the entire interest and estate of the mortgagor and mortgagee as it existed at the date of the mortgage, and unaffected by the subsequent incumbrances and conveyances of the mortgagor. * * * The statute allowed her to be a purchaser, and, in determining the effect of the foreclosure deed, its terms draw no distinction between purchasers. It does not discriminate. Whoever may lawfully purchase becomes the purchaser, whose title is described and determined."

In People ex rel. Short v. Bacon, 99 N. Y. 275, 2 N. E. 4, it was said:

"The relator's lien or right, whatever it may have been, upon the land or interest of the mortgagor or judgment debtor, was subsequent to the mortgage. They were parties to the foreclosure, and the conveyance in pursuance of it was an entire bar against them as well as against the mortgagor. Neither could, after that, have any right or interest in the equity of redemption."

See, also, Nutt v. Cuming, 22 App. Div. 92, 47 N. Y. Supp. 800; Id., 155 N. Y. 309, 49 N. E. 880.

It follows that the judgment must be reversed, and, as it appears from the undisputed facts that the plaintiff is not entitled to any relief, the complaint is dismissed, with costs. All concur.