■ TRUSTCO BANK, NATIONAL ASSOCIATION, Appellant, v ROBERT J. EAKIN, JR. et al., Respondents, et al., Defendants. [681 NYS2d 410] —Carpinello, J. Appeal from an order of the Supreme Court (Canfield, J.), entered January 14, 1998 in Rensselaer County, which, *inter alia*, denied plaintiff's motion for leave to enter a deficiency judgment.

On this appeal from an order in which Supreme Court refused to enter a deficiency judgment in favor of plaintiff, we are asked to determine who is responsible for vandalism which occurs when the mortgagors, mortgagee and court-appointed receiver of rents all do nothing to secure a vacant mortgaged premises during the pendency of a foreclosure action. Supreme Court concluded that plaintiff, the mortgagee, was responsible for advancing sufficient funds to the receiver to board up the property and, because it failed to do so, found that "[e]quity will not permit this Court to condone [plaintiff's] actions". In addition to denying the application for a deficiency judgment, Supreme Court also imposed costs against plaintiff, awarding defendants and the receiver, respectively, $1,000 each.

Our review of the record reveals the following. In 1993, defendants Robert J. Eakin, Jr. and Christine M. Eakin (hereinafter collectively referred to as defendants) purchased two connecting, three-story walk-up apartment buildings in the City of Troy, Rensselaer County, for $188,000. In 1995, defendants executed a mortgage on the premises in favor of plaintiff in the amount of $157,000. In the fall of that year, defendants contracted to sell the property for $160,000; while the transaction never consummated due to the purchasers' default, the contract price gives the court some indication of the fair market value of the property at that time. Shortly thereafter, in February 1996, defendants defaulted on the mortgage.

The instant foreclosure action was commenced in June 1996. The following month, Supreme Court appointed a receiver of rents who, by the terms of the court's order, was "totally responsible to protect and preserve the Mortgaged Premises". For reasons not entirely clear from the record, the receiver did not qualify to serve until the posting of his bond in September 1996, at which time the premises were entirely vacant, having been abandoned by defendants. Although defendants did, at

the receiver's request, drain the water pipes in anticipation of winter, they refused his specific request for additional funds to further secure the property. During the entire receivership, the total amount of rent proceeds turned over to the receiver by defendants was $84.46.

In January 1997, the receiver wrote to plaintiff's attorney stating: "The property has been secured as well as possible. The gas, water, and electricity have all been turned off. The Defendant and his counsel had the water pipes drained. There are no tenants and to my knowledge there are no occupants in these apartments. The accesses and lower windows should be boarded up. Unfortunately, there are no funds to do so." Plaintiff declined to provide any funds to assist the receiver in preserving the premises. Apparently, the property remained unsupervised, unlet and unsecured until plaintiff's purchase of same at the foreclosure sale in May 1997 with a bid of $75,000. The premises were subsequently sold by plaintiff to a third party for $27,500.

At a hearing conducted by Supreme Court on plaintiff's application for a deficiency judgment, plaintiff offered the testimony of its appraiser who testified that the property was worth $75,000 at the time of the foreclosure sale based in part on his observation that some of the units had been "trashed". Defendants offered the testimony of two appraisers who valued the property at $174,000 and $140,000, respectively, with the latter appraiser testifying that most of the damage was "cosmetic". Alternatively, defendants argued that no deficiency judgment should be awarded at all based upon plaintiff's refusal to advance funds to the receiver to secure the property, and that the receiver himself should be surcharged for his failure to protect the property during the term of his receivership. Plaintiff appeals from Supreme Court's determination denying its application for a deficiency judgment in its entirety and assessing costs against it.

We begin our analysis by noting that a court-appointed receiver in a foreclosure action is an officer of the court and not an agent of the party who procured the appointment (*see, Kaplan v 2108-2116 Walton Ave. Realty Co.*, 74 AD2d 786). During the pendency of the receivership, the property is, in essence, in the possession of the court itself (*see, Walling v Miller*, 108 NY 173, 178) and we assess the legal consequences of any diminution in the value of the property in this context. While it may have been more prudent for the receiver to have applied to the court to terminate the receivership upon discovering that the premises were vacant at the time of qualification (*see, Emigrant*

*Indus. Sav. Bank v Feldblum Realty Corp.*, 238 App Div 231, 232), we cannot disagree with Supreme Court's conclusion that the receiver should not be surcharged. Ordinarily, a receiver "should not be put in jeopardy personally as to his or her own financial status merely because the property is one which cannot readily be administered" (91 NY Jur 2d, Receivers, § 49, at 582; *cf., Griffo v Swartz*, 61 Misc 2d 504, 514).

We also note that in this case plaintiff was *not* a mortgagee in possession (*compare, Aetna Life Ins. Co. v Avalon Orchards*, 118 AD2d 297, 300, *appeal dismissed* 68 NY2d 997), for only then would plaintiff have been obliged "to use reasonable means to preserve the property from loss and injury and to conserve its value" (*id.*, at 300). In hindsight, it may have also been more prudent for plaintiff, instead of doing nothing, to have petitioned Supreme Court for authority to expend its own funds in aid of the court's receiver to secure the property and add that expenditure to the amount of its judgment. Nonetheless, we find no authority—and Supreme Court cites none—imposing upon a mortgagee, other than a mortgagee in possession, any legal obligation or duty to expend funds to preserve mortgaged premises, the default of which can affect its entitlement to a deficiency judgment.*

Indeed, in the absence of action by all parties—mortgagee, mortgagors and receiver—it was defendants who had the most to lose and therefore the greatest incentive (and legal right) to act because the amount of any potential deficiency judgment is the difference between the judgment of foreclosure and the greater of the highest bid at the foreclosure sale or the fair market value of the property at the time of the sale (*see,* RPAPL 1371 [2]). Defendants justify their own inactivity by pointing to language in the order appointing the receiver that they were not to "interfer[e] in any manner with the [subject] property". More to the point is the fact that the receiver specifically requested their assistance in securing the property, which they refused. It is axiomatic that defendants' title and right to possession of the mortgaged premises (except as it may have been affected by the receivership order) continued until the equity of redemption was extinguished at the foreclosure sale (*see, Barson v Mulligan*, 191 NY 306). Since defendants admit in their brief that "the damage to the premises occurred following the appointment of the Receiver and prior to the sale of the property", defendants must suffer the consequences caused by

---

* In fact, one of the incentives to seek a court-appointed receiver is to "insulate the mortgagee from tort and related landowner-type liabilities" (Restatement [Third] of Property-Security [Mortgages] § 4.3, comment *a*).

their failure or refusal to secure the property titled in their name.

Exercising our right to review all the evidence adduced before Supreme Court (*see, Manhattan Sav. Bank v Farrell*, 268 App Div 981), we find the most credible appraisal of the fair market value of the property as of the date of the foreclosure sale to be the second of defendants' two appraisals, i.e., $140,000. Thus, a deficiency judgment in the amount of $43,664.15 has been established.

As a final matter, we also find that Supreme Court erred in imposing costs against plaintiff. In addition to making such award without conducting a hearing on this issue or setting forth the reasons why it found the conduct to be frivolous and the amount to be appropriate (*see*, 22 NYCRR 130-1.2; *Ingber v Sabato*, 229 AD2d 884, 887-888, *appeal dismissed* 88 NY2d 1064, *lv denied* 90 NY2d 808; *McCue v McCue*, 225 AD2d 975, 979), we do not find, as evidenced by our disposition of the matter, that plaintiff's conduct was frivolous (*see*, 22 NYCRR 130-1.2).

Cardona, P. J., Mercure, White and Spain, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted and deficiency judgment entered in favor of plaintiff in the amount of $43,664.15.

