**In re Nori MIZUNO, Debtor.**

**No. 802–82310–511.**

United States Bankruptcy Court,
E.D. New York.

Nov. 18, 2002.

Paula A. Miller, P.C., Smithtown, NY, for Frederick Wightman.

Roy Lester, Lester & Fontanetta, P.C., Garden City, NY, for Debtor.

## *DECISION*

### (Re: Motion for Relief from the Automatic Stay)

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

By Notice of Motion dated September 11, 2002, Frederick Wightman ("Wightman") seeks an order pursuant to 11 U.S.C. §§ 362(d) and 1301(c) modifying and vacating the automatic stay to allow him to exercise all ownership rights that he has in the premises, including the commencement and/or continuation of proceedings to dispossess the Debtor and all other

occupants from the premises known as 5 Gerry Lane, Lloyd Harbor, N.Y. (the "Property"), and to obtain an order of the New York State District or Supreme Court (the "State Court") for a money judgment for "use and occupancy" for the period of the Debtor's alleged unlawful possession of the premises. For his part, the Debtor, Nori Mizuno, opposes the motion and cross-moves for an order that would

a. grant him and his family the right to remain on the Property for one year, notwithstanding the foreclosure sale, on the basis that the Property is essential to his reorganization in Chapter 13 because it was his home for over 10 years and it is difficult for a family to up-root within a shorter period of time; and

b. declare the foreclosure sale as null and void because, although it was conducted on April 4, 2002 which was within the 180–day period sanctioned by a prior Order lifting the automatic stay with prejudice, the deed was not conveyed until after that period had expired.

### Background of the Proceedings

This is the fourth bankruptcy case filed by the Debtor. The first was a Chapter 11 case that he and his wife filed on August 7, 1995. *See In re Norihiro and Reiko Mizuno*, Case No. 095–72256–511 (the "First Case"). During the course of the First Case, an Order was entered on January 15, 1997 that converted it to Chapter 7. Shortly thereafter, on May 7, 1997, the case was re-converted back to Chapter 11. Despite several attempts, the debtors were unable to confirm a proposed plan of reorganization. On December 3, 1997, the case was dismissed.

On April 13, 1998, the Mizunos filed their second case, seeking relief under Chapter 13. *See In re Norihiro and Reiko Mizuno*, Case No. 098–83570–511 (the "Second Case"). On July 23, 1998, the Court confirmed their proposed Chapter 13 Plan. Approximately one year later, the case was dismissed on the motion of the Chapter 13 Trustee after the Mizunos became delinquent in their payments due under their Plan. *See* Order of Dismissal, dated July 20, 1999.

On September 13, 1999, Norihiro Mizuno filed another Chapter 13 case. *See In re Norihiro Mizuno*, Case No. 099–87844–511 (the "Third Case"). His proposed Chapter 13 Plan was confirmed on April 13, 2000. On May 1, 2000, the Court entered a "conditional order" which granted The First National Bank of Chicago, as Trustee (the "Bank") relief from the automatic stay in the event that the Debtor defaulted in his post-petition obligations (the "May 1st Conditional Order"). On January 7, 2002, the Bank filed a "Notice to Cure" in accordance with the terms of the May 1st Conditional Order. On January 31, 2002, the Bank filed an affidavit of non-compliance by the Debtor as further required by the May 1st Conditional Order. On February 19, 2002, the Chapter 13 Trustee filed a motion to dismiss the case based upon the Debtor's failure to make payments under the terms of his plan. The Debtor did not oppose the motion and, on March 11, 2002, the Court entered an Order dismissing the Third Case.[1]

---

1. By Order to Show Cause, dated July 9, 2002, the Debtor sought to reopen the Third Case for the limited purpose of having this Court modify the May 1st Conditional Order so as to delete the "with prejudice" relief. The Court declined to sign the Order to Show Cause. *See Order*, dated July 9, 2002. Familiarity with the July 9th Order is assumed. The Debtor appealed the July 9th Order by Notice filed on July 19, 2002. That appeal is yet pending.

On April 3, 2002, the Debtor commenced the instant Chapter 13 case. *See In re Nori Mizuno*, Case No. 02–82310–511 (the "Fourth Case"). His proposed plan was confirmed at a hearing held on September 26, 2002. This is the second motion made by the movant seeking relief from the automatic stay. The first motion was denied, without prejudice, following a hearing held on September 9, 2002. Familiarity with that hearing is assumed. In brief, the Court agreed with the Debtor that the movant had not presented a deed that was consistent with the history of the proceedings.

The following events are undisputed by the parties. On April 4, 2002, the Bank sold the Property at a foreclosure sale to East End Developers.[2] The Referee, duly appointed in connection with the foreclosure sale, executed a deed on July 22, 2002. *See* Exhibit D to Movant's papers. On that same date, East End Developers transferred title to Wightman.[3]

### Discussion

Wightman contends that he is now the owner of the Property and that, since the Debtor no longer has any ownership interest in the Property, the Property is not a necessary part of the Debtor's reorganization. For this reason, Wightman requests that the automatic stay be vacated to permit him to evict the Debtor and his family. He further seeks relief from the automatic stay in order to pursue and obtain a money judgment for "use and occupancy" for the period of the Debtor's occupation at the Property since he became the owner.

For his part, the Debtor makes two arguments. He first asserts that the Property is "absolutely essential" to his reorganization under Chapter 13 and that the Court is required to consider factors such as the proximity of the Property to the Debtor's work, schools (where his children are attending), recreation and church. Relying upon *Lundin—Chapter 13 Bankruptcy*, the Debtor urges that the Court must also consider the Debtor's difficulty in getting a new mortgage and the cost of comparable housing. Since he has lived in his home for nearly 10 years, he requests that he be permitted to remain in the Property for at least one year and to be permitted to pay "reasonable rent" to Wightman as adequate protection.

The Debtor's second argument is that he continued to have an equitable right to redeem the Property up until the point of the actual conveyance of the deed from the Referee to East End Developers on July 22, 2002. In support of his contention, he relies upon *Nutt v. Cuming*, 155 N.Y. 309, 312, 49 N.E. 880 (1898), where the Court of Appeals stated that

> It will thus be observed that under the provisions of the judgment the right, title and interests of the defendant became barred and foreclosed, not upon

---

**2.** The foreclosure sale took place within the 180–day period as to which the automatic stay did not arise by reason of the entry of the May 1st Conditional Order in the Third Case. By its terms, the May 1st Conditional Order provided that, in the event that the Debtor failed to cure a default, after notice was given, the "automatic stay [was] immediately vacated with respect to First National Bank of Chicago, As Trustee, ... to foreclose on the mortgage secured by the real property located at 5 Gerry Lane, Huntington, N.Y. 11743, without further application to the Court."

The parties further agreed that, in the event of non-compliance, the automatic stay would be lifted with prejudice for a period of 180 days. *See May 1st Conditional Order.*

**3.** The original deed transferring title from East End Developers to Wightman is dated July 9, 2002 and is annexed as Exhibit E to the moving papers. A "correction deed" was made on September 10, 2002 to indicate that the "correct" date of the deed should be July 22, 2002. *See Exhibit G* to moving papers.

the date of the entry of the judgment, but from and after the sale of the premises *and the conveyance made thereunder.*

*Id.* (emphasis added); *see also Citibank v. Gassmann,* Index No. 20398/94, *unreported decision* (Sup.Ct. Queens County, February 17, 1998) ("In this court's view, the mortgagors' right of redemption is not extinguished at the auction of the property but only when the sale is actually completed by the transfer of the deed"); *Nichols v. Howell,* 116 Misc. 340, 190 N.Y.S. 1 (Sup.Ct. Stueben County 1921). Because the title did not transfer until July 22, 2002 (beyond the 180–day period allowed in the May 1st Conditional Order), the Debtor claims that the automatic stay was "reinstated" upon expiration of the 180–day period on July 2, 2002. Thus, the Debtor argues that (i) the transfer of the Referee's deed on July 22nd was in violation of the stay and should be declared void; and (ii) his right of equitable redemption has not expired and he should have the right to cure the arrears owing the Bank through his Chapter 13 Plan.

Upon consideration of the arguments, the Court concludes that the Debtor misreads the holding of the Court of Appeals in *Nutt v. Cuming* and that, notwithstanding the *Citibank* decision, the courts of the State of New York are clear that the right of redemption expires upon the completion of the foreclosure sale.[4] Each of the arguments presented by the Debtor were considered, and rejected, by

Chief Judge Conrad B. Duberstein, U.S.B.J., in *In re Ghosh,* 38 B.R. 600 (Bankr.E.D.N.Y.1984), and *In re Cretella,* 42 B.R. 526 (Bankr.E.D.N.Y.1984). As Chief Judge Duberstein stated in the *Ghosh* decision, which preceded his decision in *Cretella:*

> A debtor's right to reinstate a mortgage in a Chapter 13 case must always be gauged according to his interest in the property as defined by state law. *See Matter of Valente,* 34 B.R. 804 (Bankr.D.Conn.1982). Since New York has no redemption statute, the debtor's interest in the property is extinguished upon the completion of the foreclosure sale. He has no right to reinstate the mortgage since it no longer can be property of his estate as defined by Section 541 of the Code. . . . The purchaser . . . is therefore entitled to have the deed delivered to him without interference from the debtor. Thus, the debtor does not have the right to deaccelerate as provided for in *[In re] Taddeo*[, 685 F.2d 24 (2d Cir.1982)] and *[In re] Acevedo,* [26 B.R. 994 (E.D.N.Y.1982)] *supra.* Once the legal and equitable interests of the debtor are terminated as established by state law, that right is lost.

38 B.R. at 603 (citations omitted).

Like the Debtor here, the debtor in *Cretella* also questioned the holding in the *Ghosh* decision by pointing to the same quotation in *Nutt v. Cuming* that is cited above. Upon careful review of the circum-

---

4. *See, e.g., Carnavalla v. Ferraro,* 281 A.D.2d 443, 722 N.Y.S.2d 47 (2d Dep't 2001) ("Although the mortgagor entered into the contract to sell the property to the plaintiffs after a judgment of foreclosure and sale had been entered against him, the entry of such a judgment does not divest the mortgagor of his title and interest in the property until the sale is actually conducted"); *United Capital Corp. v. 183 Lorraine Street Associates,* 251 A.D.2d 400, 675 N.Y.S.2d 543 (2d Dep't 1998) ("It is

well settled that the owner of the equity of redemption has a right to redeem at any time before an actual sale under a judgment of foreclosure"); and *Trustco Bank, N.A. v. Eakin,* 256 A.D.2d 778, 681 N.Y.S.2d 410 (3rd Dep't 1998) ("It is axiomatic that defendants' title and right to possession of the mortgaged premises ... continued until the equity of redemption was extinguished at the foreclosure sale").

stances presented in *Nutt,* Chief Judge Duberstein rejected the debtor's analysis by observing that the

> sole issue presented to [the *Nutt* ] court was whether or not a judgment obtained against a mortgagor ceased to be a lien upon the mortgaged premises at the expiration of ten years from the date of its perfection where the foreclosure sale actually took place beyond the ten years. The court held that the foreclosure sale must take place within ten years in order to preserve the lien of the judgment creditor. *The court did not hold as the debtor contends, that the mortgagor's interest in the property continued after the sale.* The decision was concerned solely with the rights of parties other than the mortgagor.
>
> . . .
>
> This Court is of the opinion that *Nutt v. Cuming* thus supports the foregoing authorities that a foreclosure sale effects a consummated sale without the requirement that the sale be confirmed by the court insofar as cuts off the mortgagor's right of redemption.

42 B.R. at 531 (emphasis added). Moreover, Chief Judge Duberstein also rejected the *Cretella* debtor's arguments that the mortgagor's rights continued until the time of conveyance of title post foreclosure sale:

> It is thus abundantly clear that the mortgagor has no legal or equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place, unless of course he has the right to redeem. In New York the law is abundantly clear that the owner of the equity of redemption has a right to redeem at any time before an actual sale under a judgment of foreclosure . . . . .
>
> The fact that bankruptcy courts in other jurisdictions have recognized the right of a debtor to reinstate a mortgage

after a sale, but prior to the passing of a deed, is not relevant to this proceeding inasmuch as those states where such decisions have been rendered provide for redemption statutes, whereas New York does not. . . .

*Id.* at 532 (citations omitted).

Relying, then, upon the reasoning in *Ghosh* and *Cretella,* this Court rejects the Debtor's contention that he continued to have an equitable right to redeem the Property up until the point of the actual conveyance of the deed from the Referee to East End Developers on July 22, 2002. Rather, the Debtor's equitable right to redeem the Property was extinguished upon the foreclosure sale of the Property that took place on April 4, 2002. Although this sale took place after the Debtor filed the within petition on April 3rd, the automatic stay did not arise with respect to the foreclosure actions by the Bank by reason of the May 1st Conditional Order in the Third Case. *See generally In re Casse,* 198 F.3d 327, 335–38 (2d Cir.1999).

■ The Court also rejects the Debtor's claim that he is entitled to reinstate the mortgage through a Chapter 13 plan. The Debtor did not confirm his Chapter 13 plan until September 26, 2002. By that point in time, the Property had been sold at the foreclosure sale and all of the Debtor's legal and equitable interests in the Property had been extinguished.

■ Lastly, although the Court is sympathetic to the plight of the Debtor and his family having to relocate and find a new home, there is no basis in law to deny the new Property owner of the rights of ownership, which include the right to proceed with eviction. All that the Debtor has, at this juncture of the proceeding, is a possessory interest in the Property. While that possessory interest is sufficient to prevent Wightman from taking further ac-

tion in the absence of the automatic stay being lifted, it is not a sufficient basis to deny Wightman's motion. *See In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir.1987).

For all these reasons, the Court grants Wightman's motion in all respects: the automatic stay is lifted, pursuant to 11 U.S.C. § 362(d) and 1301(c), to allow him, his successors and assigns to exercise all ownership rights that he has in the Property, including, without limitation, any action which is necessary to dispossess the Debtor and all other occupants from the Property and to obtain an order of a court of competent jurisdiction for a money judgment for "use and occupancy" for the period of the Debtor's unlawful possession of the Property.

For these same reasons, the Debtor's cross-motion is denied.

A separate order consistent with this Decision is being entered on this same date. The Court directs the clerk to serve a copy of this Decision, as well as the accompanying Order, upon the Debtor, his counsel, the movant's counsel and the Chapter 13 Trustee.