[689 NYS2d 447]

In the Matter of V.C., Appellant, v H.C., Sr., et al., Respondents.

First Department, May 4, 1999

## APPEARANCES OF COUNSEL

*Dorchen Leidholdt* of counsel (*Deborah A. Bigel, Sue Choi* and *Mary Rothwell Davis* on the brief; *Sanctuary For Families Center For Battered Women's Legal Services,* attorneys), for appellant.

*Howard M. Simms* for H.C., Sr., respondent.

*Bruce A. Young* for H.C., Jr., respondent.

*Gretchen Mullins Kim* for My Sister's Place; *National Coalition Against Domestic Violence; NOW Legal Defense & Education Fund; New York Legal Assistance Group; Network For Women's Services; Pace Battered Women's Justice Center; The Urban Justice Center; Westchester/Putnam Legal Services; Legal Services for New York City, Brooklyn Branch; SAKHI for South Asian Women; Queens Legal Services Corporation; Do-*

*mestic Violence Report,* and *Pennsylvania Coalition Against Domestic Violence, amici curiae.*

## OPINION OF THE COURT

ELLERIN, P. J.

At issue on this appeal is whether the Family Court, having found that a victim of domestic violence who has fled the marital home for her safety is entitled to an order of protection, should also have provided a remedy that could restore the victim to her home and exclude her abusers instead of leaving the home in the sole possession of the abusers.

On January 3, 1995, petitioner, a middle-aged deaf woman, filed petitions for orders of protection, alleging that she had fled her home in December 1994 because of escalating violence and abuse by her husband and their adult son and requesting that the orders provide that respondents be excluded from their common residence. Specifically, she alleged, *inter alia,* that her husband physically and verbally abused and threatened her, changed the locks on the marital home and refused to give her a key, and forced her to take drugs against her will, and that their son was verbally and physically abusive.

Following an initial ex parte proceeding, the Family Court denied the request that respondents be excluded from the home and issued temporary orders of protection pursuant to Family Court Act § 828 requiring respondents not to "assault, menace, harass or recklessly endanger petitioner" and "not to exclude petitioner from the [marital] residence".

At the fact-finding hearing, petitioner testified that she fled to her daughter's home in December 1994 after two incidents in which her husband, who is confined to a wheelchair, pointed a loaded gun at her and threatened to kill her. On November 18, 1994, while her husband was high on cocaine, he pulled a loaded gun out from under the seat of his wheelchair, pointed it at her, and said, "I am going to kill you". She ran into the bathroom and locked the door. On another day, he reached into the drawer in the couple's bedroom, placed his hand on his gun, and cursed at her. She called for their son to come help her, but when he entered the room he blocked the bedroom door and trapped her in the room.

Petitioner also testified that, in 1975, her husband, while intoxicated, shot her in the heat of a dispute, grazing her chest. He was not arrested because he told the police that someone else had shot her, and he threatened those present, including

petitioner's oldest son, who is his stepson, not to contradict his story.

In addition to these specific incidents, petitioner testified that her husband constantly abused her by punching her in the face and pulling her hair. She also testified that he hit her twice on the back with a stick.

As to the petition against her younger adult son, petitioner testified that he punched and slapped her when she refused his demands to cook meals or do other errands for him, made at all hours of the day and night. On numerous occasions, father and son acted together to abuse her. In November 1994, they changed the locks on the home and refused to give her a key. It was only after she had left home, retained counsel, and obtained an ex parte order of protection that they eventually provided her with a key.

Petitioner's adult daughter corroborated her mother's account of her stepfather's abuse, providing details as to other incidents, including one in which he attempted to stab petitioner with a machete, and confirming that her stepfather always kept a gun near him. She also testified that when her mother arrived at her home in December 1994, she noticed that her mother, who said she was frightened, was severely bruised. Although petitioner's daughter's testimony was cut short, she also testified briefly to certain incidents during her childhood, including her stepfather's use of herself and her brothers and cousins to assist him in selling drugs until, as a teenager, she was placed in foster care.

Petitioner's oldest son also corroborated the abuse against his mother, stating that it was often precipitated by drinking. He recounted witnessing the 1975 shooting, and he also testified that his stepfather had sexually abused him from the time he was seven or eight until he was in ninth grade, at which time he left home to live on the streets to escape the abuse.

On August 18, 1995, the court informed counsel that it was terminating the fact-finding hearing because sufficient evidence had already been presented to show that respondents had committed the family offense of harassment. Petitioner's counsel objected, arguing that the remainder of the evidence would establish far graver offenses. The court overruled the objection and instead offered respondents the option of admitting to harassment, in which case they could remain in the marital residence pending disposition. In the alternative, it informed them that it would make a finding of harassment and would exclude them from the apartment pending disposition.

Respondents admitted to harassment. The court thereupon extended the ex parte order of protection requiring them not to harass petitioner and ordered Mental Health Services (MHS) to evaluate the parties and render a recommendation as to disposition.

Although that report was prepared, it failed to make a recommendation as to disposition. The matter was set down for disposition, but was transferred several times to different Judges for various reasons, including the failure of the court to provide an appropriate interpreter for petitioner, and the transfer to another county of an assigned Judge. Ultimately, on July 17, 1996, 18 months after petitioner had fled her home to escape from the abuse and filed petitions, the matter appeared before Judge Cohen for a dispositional hearing. However, rather than hearing testimony, the court issued a ruling summarily denying a three-year order of protection and denying the request that the order of protection exclude the respondents from the marital home, and instead issued a one-year order of protection merely requiring respondents to stay away from petitioner. The court stated:

"[I]t is my understanding that the main issue at this dispositional hearing is the apartment. I want it clear I am not ruling on who gets the apartment. I won't even consider it.

"At this point my understanding is that the mother moved out and is living somewhere else and she wants the apartment back. * * *

"If the petitioner wants the apartment she will have to take appropriate action in the appropriate court. This is not the court for this. You can have a hearing for 20 months and I will never rule on who gets this apartment. It's not before me."

We reverse.

Among the purposes of a family offenses proceeding under article 8 of the Family Court Act is to protect victims of domestic violence by providing "a civil, non-criminal alternative to a criminal prosecution" (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 812, at 181) when family members commit certain designated criminal offenses.[1]

When the allegations in a petition set forth that a respondent has committed one or more of these offenses, the Family

---

1. The designated offenses include "disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, menacing in the second degree, menacing in the third degree, reckless endangerment, assault in the second degree, assault in the third

Court will hold a fact-finding hearing to determine whether the allegations are established by a fair preponderance of the evidence (Family Ct Act § 832). In seeking to establish the allegations, the petitioner must set forth "[o]nly competent, material and relevant evidence" (Family Ct Act § 834).

If the petitioner is able to establish the allegations in the petition and demonstrate that the respondent has committed a family offense, the court will generally hold a dispositional hearing (Family Ct Act § 835). A broader standard of admissibility of evidence is available on the dispositional hearing than at the fact-finding hearing, and evidence may be admitted as long as it is "material and relevant" (Family Ct Act § 834), including hearsay and other evidence otherwise incompetent (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 834, at 240).

Following the dispositional hearing, the Family Court may dismiss the petition if the allegations in the petition are not established, suspend judgment for up to six months, place respondents on probation for up to one year and require them to participate in an educational program, issue an order of protection, or order restitution (Family Ct Act § 841). The order of protection may set forth "reasonable conditions of behavior to be observed * * * by the petitioner or respondent", including, but not limited to, requiring them "to stay away from the home * * * [of] the other spouse" (Family Ct Act § 842 [a]). Such a condition may be imposed not only where the parties are already living apart at the time the order is issued but, where necessary, it may also be imposed where it will require a party to stay away from what has heretofore been his or her own home (*see, Merola v Merola*, 146 AD2d 611; *Kilmer v Kilmer*, 109 AD2d 1004; *Matter of Leffingwell v Leffingwell*, 86 AD2d 929).

■ Initially, we reject respondents' argument that petitioner's appeal is academic because the one-year order of protection has expired and has not been renewed. Petitioner's argument that the court improperly failed to exclude respondents from the marital home as a condition of the order of protection is obviously not academic. Petitioner, who has shown that she remains unable to return to her home based upon the court's failure to address the issue of whether respondents should be excluded, is clearly continuing to suffer harm. Moreover, by

degree or an attempted assault between spouses or former spouses, or between parent and child or between members of the same family or household" (Family Ct Act § 812 [1]).

removing herself from the family home for her own safety, petitioner obviated the need for a further order of protection, so her failure to seek one does not render academic her argument that the order was inadequate (*cf.*, *Matter of Alice C. v Joseph C.*, 212 AD2d 698 [issue of whether court improperly refused to issue order of probation as part of order of protection without holding dispositional hearing is academic, since order of protection has expired]).

■ Moreover, we find that Family Court erred in failing to hold a dispositional hearing to consider the issues of whether the order of protection should have included a provision excluding respondents from the marital apartment and whether it should have extended for three years.

We find no basis in law for the Family Court's action in refusing to even consider whether respondents should be excluded from the apartment as a condition of the order of protection, which it had found to be clearly warranted by respondents' behavior. As noted above, the Family Court is unquestionably permitted to order a nonresident party to stay away from the home of the other spouse or to exclude a resident party from the common home (*Matter of Ross v Ross*, 152 AD2d 580; *Matter of Quintana v Quintana*, 237 AD2d 130; *Merola v Merola, supra*; *Kilmer v Kilmer, supra*; *Matter of Leffingwell v Leffingwell, supra*). There is no logical rationale to limit the power of the court by prohibiting it from excluding a resident abusive spouse merely because the victim of the abuse has been forced by her abuser to flee their common home. Such a holding would reward the worst of abusers, i.e., those whose behavior was so violent or threatening that it forced their family members to leave home, with automatic possession of the home, and would obviously frustrate the intent of the statutory scheme, which seeks to protect, not punish, the victims of domestic violence.

For these reasons, it was clearly error for the Family Court to base its decision, as it intimated it was doing, on the fact that petitioner could theoretically seek exclusive occupancy of the marital home in a divorce action commenced in Supreme Court. The issue before the Family Court was not, as claimed by respondents, a permanent award of exclusive possession of the marital property incident to the divorce (*cf.*, *Handa v Handa*, 103 AD2d 794, *appeal dismissed* 64 NY2d 1040; *Matter of Roy v Roy*, 109 AD2d 150), but instead, the propriety of an exclusion order to prevent further family disturbance (*see*, *Kilmer v Kilmer, supra*). Regardless of the fact that the

petitioner had already moved out, the Family Court not only has jurisdiction to determine this issue, but it is its very mandate to provide for this type of relief in matters involving family violence. Clearly, recourse to a divorce proceeding was of little or no use to petitioner. Not only would she not be entitled to counsel in a divorce proceeding, but the commencement of a new action would cause further delay, during which time petitioner would remain excluded from her home by the threat of violence.

Further, while we must remain sensitive to the fact that the Family Court must deal with the practical realities of the impact of its decisions on the safety and well-being of the litigants before it, we note that the court should not base its decision solely on the fact that one party has found another place to stay and the other has not.[2] A victim of the outrageous and life-threatening sort of abuse set forth in this matter cannot be held hostage to the potential homelessness of her abuser, who created the intolerable situation in the first instance.

Moreover, in addition to its failure to consider excluding respondents from the home, we find that the Family Court erred in not considering whether the order of protection should extend for three years. Section 842 of the Family Court Act sets out the conditions which may be granted under an order of protection, and it provides that a final order of protection may extend for one year "or for a period not in excess of three years upon a finding by the court on the record of the existence of aggravating circumstances as defined in paragraph (vii) of subdivision (a) of section eight hundred twenty-seven of this act", which provides, in pertinent part, that "aggravating circumstances shall mean physical injury or serious physical injury to the petitioner caused by the respondent, the use of a dangerous instrument against the petitioner by the respondent, a history of repeated violations of prior orders of protection by the respondent, prior convictions for crimes against the petitioner by the respondent or the exposure of any family or household member to physical injury by the respondent and

---

2. In this context, petitioner argues quite compellingly that, if the court were going to base its decision on the fact that she had found another place to live and that her husband, who was in a wheelchair, had no place else to go, she should at least have been permitted to present evidence showing that he was not without other relatives in the area who could take him in and that the accommodations that she had since found, i.e., sharing a one-bedroom apartment that was not outfitted with special equipment for the hearing impaired with her daughter, her granddaughter and her daughter's boyfriend, were completely inadequate to her needs.

like incidents, behaviors and occurrences which to the court constitute an immediate and ongoing danger to the petitioner, or any member of the petitioner's family or household."

We categorically reject respondents' argument that a petitioner must specifically state in the petition that "aggravating circumstances" exist in order for the court to issue a three-year order of protection upon disposition. There is certainly no such requirement in the statute. Clearly, it is for the court to determine, on the evidence before it, whether such circumstances exist, and the court is in no way barred from doing so merely because the petitioner did not use certain special language in her petition.

Respondents also argue that, regardless of whether the court erred in determining that it did not have the power to grant petitioner the relief she requested, petitioner has not demonstrated that she was entitled to a dispositional hearing because all of the facts relevant to her claim were presented in the fact-finding hearing and those facts demonstrate that the order issued by the court was the appropriate relief under the circumstances.

However, it is clear that, under the circumstances of this case, petitioner was entitled to present further evidence on the issue of disposition (*cf.*, *Matter of Quintana v Quintana*, *supra* [Family Court was not required to hold dispositional hearing "where the court did receive and consider the type of evidence that would have been admitted at a dispositional hearing had the court formally chosen to bifurcate the matter"]). In particular, we note that petitioner has demonstrated that the fact-finding hearing, which was held before a different Judge from the one determining disposition, was abbreviated by respondent's admission to the family offense of harassment prior to petitioner having had an opportunity to present evidence that she claims would have been crucial to disposition. Most significantly, at the fact-finding hearing, the court terminated the case prior to the planned testimony of an expert on battered women's syndrome, who, according to petitioner's offer of proof, would have helped explain her delayed reaction to the abuse inflicted upon her, her inability to leave the marital home on her own, and the impact of her deafness on her ability to function under hostile circumstances. These were factors relevant not only to fact finding but to disposition as well. While the court had already ruled that the expert's testimony was germane to the issues presented, it apparently concluded that it was able to reach a conclusion as to the fact-finding por-

tion of the proceeding without the testimony. Under these circumstances, petitioner has demonstrated that she had further evidence relevant to disposition that she should have been permitted to set before the court.

Nor was the necessity of a hearing obviated by the existence of the MHS report. In the appropriate case, it is not impossible that the evidence presented at the fact-finding hearing, if sufficiently broad in scope, could be an adequate basis for a disposition along with a MHS report. However, an MHS report in and of itself does not take the place of the parties' right to present evidence on disposition.

Finally, we note the absurdity of the argument set forth by respondents that there was no need for a dispositional hearing to explore whether an order of exclusion was necessary because the record is clear that respondents ceased harassing petitioner when ordered to do so in the original temporary order of protection. We can hardly require evidence of continuing harassment to be a condition to an order of exclusion in a situation where the respondents, who were found to have committed harassment, remain in the home while their victim has been forced to flee, thereby eliminating both their motivation and opportunity to further abuse her.

Under these circumstances, it is clear that a dispositional hearing was necessary in this matter. We therefore remand for a dispositional hearing before a different Judge of the Family Court (*see*, *Matter of Eames v Eames*, 147 AD2d 696), to determine whether an order of protection excluding respondents from the apartment is warranted and whether it should extend for three years.

Accordingly, the order of the Family Court, New York County (Rhoda Cohen, J.), entered on or about July 17, 1996, which, *inter alia*, denied petitioner's application for a three-year order of protection excluding respondents from the marital residence, should be reversed, to the extent appealed from, on the law, without costs, and the matter remanded for a dispositional hearing forthwith before a different Judge of the Family Court.

SULLIVAN, WILLIAMS and TOM, JJ., concur.

Order, Family Court, New York County, entered on or about July 17, 1996, reversed, to the extent appealed from, on the law, without costs, and the matter remanded for a dispositional hearing forthwith before a different Judge of the Family Court.