OPINION OF THE COURT
Michael L. Pesce, J.
In these tax certiorari proceedings instituted by Brookmar Corp. and Marina Development Associates (who are named as the petitioners herein), respondents the Tax Commissioner of the City of New York and the Commissioner of Finance of the City of New York (respondents) move for summary judgment dismissing the petitions with respect to the premises known as 4302 Westshore Avenue in Brooklyn, New York (block 6944, lot 480).
Brookmar was the owner of real property located at 4302 Westshore Avenue in Brooklyn, and Brookmar, subsequently, conveyed that property to Marina. Beginning in February 1994, no real estate taxes whatsoever were paid on the property. By petitions filed from October 6, 1995 through October 22, 2003, Brookmar and Marina instituted these RPTL article 7 tax certiorari proceedings to challenge the real property tax assessments on the property for the 1994/1995 tax year and each year thereafter.
Since the real property taxes due and accruing from February 1994 and thereafter remained unpaid, these unpaid taxes, pursuant to Administrative Code of the City of New York § 11-301, became liens upon the property. On May 21, 1996, the NYCTL 1996-1 Trust (the Trust) purchased the tax liens on the property. The Trust, on February 13, 1998, then commenced a tax lien foreclosure action against Marina. Marina failed to timely appear or answer in the foreclosure action, and a final judgment of foreclosure and sale, dated August 10, 1999, was entered on September 14, 1999. The foreclosure sale of the property was stayed by Marina’s filing for bankruptcy relief. Following resolution of Marina’s bankruptcy case, the foreclosure auction sale of the property was held on May 22, 2002.
At the May 22, 2002 foreclosure auction, the upset price of the property was $7,448,010. No one bid this sum at the foreclosure sale, and the Trust was, therefore, required to “bid in” and become the successful bidder. On August 10, 2004, the Trust entered into an assignment and assumption of bid agreement with Westshore Development, LLC, whereby the Trust and Westshore agreed upon a purchase price for the assignment of *774 the bid. to Westshore in the amount of $10,650,000. The closing of the bid assignment and transfer of title to Westshore took place on December 10, 2004. From the time of the May 22, 2002 auction to the closing of the bid assignment, the amount of additional tax liens which had been sold on the property, interest, and other charges had accrued, resulting in the sum of $13,396,839 due and owing on the property. Consequently, at the closing of the bid assignment, the $10,650,000 payment was allocated to pay transfer taxes, HPD charges, the current real estate taxes in the amount of $230,879, and the various Trusts, most recent first, which held subsequent liens on the property. The proceeds of $10,650,000 were insufficient to fully satisfy all of these owed sums, with a shortfall of $1,653,043 remaining on a 1998-1 Trust (sold July 16, 1997) and the foreclosed lien of $1,201,601 remaining completely unsatisfied.
By assignment dated April 26, 2006, Brookmar and Marina assigned all of their rights, title, and interest to the claims asserted by them in these tax certiorari proceedings to Westshore, and Westshore authorized Brookmar and Marina to prosecute these proceedings in its name, place, and stead. Brookmar and Marina are presently prosecuting these tax certiorari proceedings on behalf of Westshore. Brookmar and Marina contend, in opposition to respondents’ instant motion for summary judgment dismissing the petitions, that they have standing to pursue these proceedings on Westshore’s behalf based upon Westshore’s status as the present owner of the property and by virtue of their April 26, 2006 assignment to Westshore.
Respondents, in support of their motion for summary judgment dismissing the petitions, contend that no taxes were ever paid on the subject property by Westshore (the current owner of the property) or its assignors, Brookmar and Marina, and that Marina’s title was extinguished by the foreclosure sale before it purported to assign its RPTL article 7 rights to Westshore. They argue, that as a result, Westshore has no standing to maintain this RPTL article 7 proceeding.
It is well established that all rights, including the right to redeem or satisfy the tax obligation, are terminated at the time of the foreclosure auction sale (see Nutt v Cuming, 155 NY 309, 313 [1898]; Basile v Erhal Holding Corp., 148 AD2d 484, 486 [1989]; Belsid Holding Corp. v Dahm, 12 AD2d 499, 500 [1960]). Thus, the ability of the owner of the property to satisfy the tax obligation no longer exists and is extinguished once the property is struck down at the auction (see GMAC Mtge. Corp. v *775 Tuck, 299 AD2d 315, 316 [2002]; Finance Inv. Co. [Bermuda] v Gossweiler, 145 AD2d 463, 463 [1988]).
Pursuant to the decretal paragraph of the judgment of foreclosure and sale, it was “ordered, adjudged and decreed, that each and all of the defendants in this action and all persons claiming under them . . . are hereby forever barred and foreclosed of all rights, claim, lien, title, interest and equity of redemption in the . . . premises.” The foreclosure auction sale of the premises effectuated this language and cut off Marina’s title and its right to pay the taxes owed to redeem the property (see Nutt, 155 NY at 313; GMAC Mtge. Corp., 299 AD2d at 316; Basile, 148 AD2d at 486; Finance Inv. Co. [Bermuda], 145 AD2d at 463; Dulberg v Ebenhart, 68 AD2d 323, 327 [1979]; Belsid Holding Corp., 12 AD2d at 500; 1 Bergman on New York Mortgage Foreclosures § 2.21 [3]; § 4.07 [Matthew Bender & Co. rev 2005]). It is undisputed that at the time of the auction sale, neither Brookmar nor Marina had paid the taxes. Consequently, Marina’s title and ability to satisfy the outstanding tax obligation no longer existed once the auction sale was held on May 22, 2002.
It is beyond cavil that an assignor “could only assign a right that it legally possessed” (Case v Filmtrucks, Inc., 118 AD2d 749, 752 [1986]) and an assignee’s rights are no greater than those of the assignor (see Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 126 [1975]; TPZ Corp. v Dabbs, 25 AD3d 787, 789 [2006]; Carla Realty Co. v County of Rockland, 222 AD2d 480, 481 [1995]; GMAC Commercial Credit v J.C. Penney Co., 186 Misc 2d 701, 702 [2001]). Thus, since no taxes were paid by Brookmar or by Marina, the prior owner, at the time of the auction sale and Marina’s title and the ability to pay the taxes were extinguished at that time, Brookmar and Marina possessed nothing left to assign to Westshore. West-shore, as the assignee of Brookmar and Marina, could not, by its subsequent purchase of the property, resurrect that extinguished right of Marina to pay the taxes, as it could not possess any greater right than Marina, its assignor (see TPZ Corp., 25 AD3d at 789; Carla Realty Co., 222 AD2d at 481).
Brookmar and Marina argue that the tax lien foreclosure could not have extinguished any rights under the tax certiorari proceeding because a tax lien foreclosure action is an in rem action which affects property interests, and the right to a tax refund in the event of an overassessment is a monetary claim, not a claim against the property itself. Brookmar and Marina *776 rely upon the fact that a RPTL article 7 tax certiorari proceeding is the exclusive procedure for review of property assessments (see Niagara Mohawk Power Corp. v City School Dist. of City of Troy, 59 NY2d 262, 268 [1983]). They point out that as a result, the challenges to the assessments could not have been litigated in the Trust’s foreclosure action. Brookmar and Marina cite the briefs of respondents in other proceedings, contending that respondents have consistently asserted that challenges to real property tax assessments must be made in a RPTL article 7 proceeding. Indeed, Brookmar and Marina reiterate, throughout their opposition papers, that the City has successfully argued, in other proceedings, that RPTL article 7 is the exclusive procedure by which a party may seek review of an improper assessment.
Such argument, however, is unavailing. Respondents do not dispute this well-established legal principle. Rather, respondents contend that once a foreclosure sale has taken place, foreclosing the right of the owner to pay the tax, the owner can no longer pursue a RPTL article 7 proceeding to obtain a refund of a tax which was never paid.
An irrefutable element of entitlement to a refund is an actual payment of money as taxes to the taxing authority. It is only that money or some portion thereof which can be refunded as excess taxes paid pursuant to RPTL 726 (1) (b). “If [an] assessment is vacated or reduced after the tax has been paid, [the] refund must be made to the person entitled thereto” (People ex rel. Ambroad Equities, Inc. v Miller, 289 NY 339, 342 [1942]). Where a person has not paid the tax, that person is not entitled to receive a refund.
While a right to a refund may not be dependent on the actual ownership of the property at the time the refund is sought (see Matter of Mack v Assessor of Town of Ramapo, 72 AD2d 604, 605 [1979]), a party must be entitled to receive a refund due to its payment of taxes (see RPTL 726 [1] [b]). A claim of overassessment, without having ever paid such alleged overassessment, cannot result in a party’s recovery against the taxing authority. Thus, a pending tax certiorari proceeding cannot proceed following a tax foreclosure where, since no taxes were ever paid, no party is entitled to a refund of such taxes.
Here, Westshore’s assignors, Brookmar and Marina, never paid any tax to respondents and, thus, had no claim to a refund. Similarly, Westshore paid no taxes, but only paid an amount for an assignment of a bid at a foreclosure sale. Consequently, West- *777 shore cannot seek a refund of a tax which was never paid (see In re Sixth Ave. El. R.R. in City of N.Y., 55 NYS2d 236, 239-240 [1945]).
Brookmar and Marina, in opposing respondents’ motion, also point to the fact that Justice Marsha L. Steinhardt, in the foreclosure action against Marina, stated in her December 9, 2002 decision and order that “[t]he proper method for correcting any errors in assessment is a [RPTL a]rticle 7 proceeding.” The recitation of this basic legal principle in that decision and order, however, similarly does not further Brookmar’s and Marina’s argument. Such dictum was expounded by Justice Steinhardt in the context of denying a motion by Marina to vacate its default and cancel the foreclosure sale. It was set forth to support the court’s holding that Marina could not defeat the Trust’s right to foreclose by virtue of the alleged overassessment of the property. Thus, this statement did not in any way indicate that Marina could still pursue a refund following the foreclosure sale where it had not paid the taxes prior to such foreclosure sale.
Brookmar and Marina additionally rely upon a private placement memorandum for the Trust, pursuant to which the monies to purchase the tax liens on the property were raised. They argue that this memorandum acknowledges the distinct possibility of a reduction of taxes following a tax lien foreclosure. This argument is unavailing. The memorandum, which was created solely for the benefit of purchasers of bonds, simply sets forth the risk factors involved, in the interests of full disclosure, so that the investment could be evaluated. Specifically, it acknowledges that the tax lien amounts, which are represented in the schedules, may be subject to reduction for a variety of reasons, including a reduction brought about by a successful RPTL article 7 proceeding. Since this would affect the final sum due either as calculated by the referee or with respect to the upset price at the foreclosure sale, this unremarkable issue is disclosed so that the purchasers cannot later void the transaction based upon a misrepresentation.
Here, the taxes were not reduced as the result of this RPTL article 7 proceeding prior to the payment to these bondholders, who loaned the funds to the Trust to enable them to purchase the tax liens from the City. Thus, this disclosed information, which does not address the issue of the effects of a foreclosure judgment and sale in a case where taxes have not been paid, is irrelevant to this pertinent issue that is raised in the present case.
*778 Brookmar and Marina also argue that RPTL 706 (2) provides that the petition in a RPTL article 7 proceeding is only required to state that “the petitioner is or will be. injured” by an excessive assessment, and the phrase “will be injured” implies that a RPTL article 7 proceeding may proceed before the taxes have actually been paid. Such argument is without moment. Even if a RPTL article 7 proceeding may be commenced prior to the payment of taxes, once such right to effectuate payment is forever extinguished by a foreclosure sale, a petitioner can no longer assert a right to a refund of taxes which were never paid.
Brookmar and Marina additionally argue that to grant respondents summary judgment herein would facilitate a windfall to the City by endorsing the overassessment of real property without review. Such argument is rejected. “It is well established that one challenging a tax assessment must continue to pay [its] taxes and that the commencement of an assessment review proceeding does not stay the collection of taxes or enforcement procedures instituted by the taxing authority” (W.T. Grant Co. v Srogi, 52 NY2d 496, 515-516 [1981]; see also Matter of County of Fulton v State of New York, 76 NY2d 675, 678-679 [1990]; Dimovich v Talev, 248 AD2d 951, 952 [1998]; Singer v Department of Fin. of City of N.Y., 191 AD2d 320, 321 [1993]). This is because “[a] government must function and to that end it must have funds” and “should not be denied or delayed in the enforcement of its right to collect the revenues upon which its very existence and the general welfare depends” (W.T. Grant Co., 52 NY2d at 516; see also Matter of County of Fulton, 76 NY2d at 679; Singer, 191 AD2d at 321).
Where the taxpayer elects not to pay the disputed revenue charges while disputing the taxes in a RPTL article 7 proceeding, it runs the risk of the loss of the property through tax foreclosure prior to a determination of its overassessment claim and a possible tax reduction. Such tax foreclosure also cuts off the delinquent taxpayer’s ability to pay the taxes and to thereafter seek a refund in such RPTL article 7 proceeding. Thus, there is no inequitable denial of review to the taxpayer since the taxpayer did not pay the tax which was allegedly overassessed, resulting in no fund against which such taxpayer can seek a refund.
Brookmar and Marina further argue that the City has been unjustly enriched because it received compensation for the taxes owed. Such compensation, however, did not derive from a payment by Westshore, but by a sale of the tax liens to the Trust. *779 Brookmar and Marina contend that the sale of the tax liens by the City to the Trust, pursuant to Administrative Code of the City of New York § 11-319, constituted a payment of taxes. It has been held, though, that a purchaser of a tax lien does not pay the tax (Matter of Blatnicky v Ciancimino, 1 AD2d 383, 388 [1956], affd 2 NY2d 943 [1957]). Rather, as explained in the affirmation of James McSpiritt, the Deputy Chief of the Municipal Finance Division of the Office of the Corporation Counsel of the City of New York, the City creates a statutory trust, which raises funds to purchase the tax liens by selling bonds to private investors using the liens as collateral. The statutory trust, in turn, compensates the City for the liens, partly in cash, representing the amount borrowed from investors, and the remainder through the ownership by the City of the residual interest in the trust. The payment to the City is simply the consideration for the sale of all right, title, and interest in and to the tax liens and all payments representing collections in respect of the tax liens. Thus, here, the sum paid to the City by the Trust did not constitute payment of the taxes by the Trust, but, instead, was a negotiated contractual sum which did not compensate the City for all outstanding taxes due upon the tax liens sold.
Brookmar and Marina also rely upon City of Buffalo v Cargill, Inc. (44 NY2d 7, 13-14, 16 [1978]). They contend that the Court of Appeals, in Cargill (44 NY2d at 14), held that when the tax lien is sold, the effect of a purchase is that the taxes are “considered paid” by operation of law even if they have not “actually been paid.”
The reliance by Brookmar and Marina upon Cargill (44 NY2d at 13-14), however, is misplaced. The Court of Appeals, in Cargill (44 NY2d at 14), merely created the legal fiction that taxes are deemed paid upon the sale of a tax lien for the sole purpose of shielding a property owner from personal liability in a lawsuit when the taxing authority had elected to acquire a tax sale certificate and to own the property. It did not rule that there was an actual payment of taxes by the sale of the tax liens, but only that no outstanding tax delinquency could be further pursued. The narrowness of the holding in Cargill (44 NY2d at 14) is confirmed by later cases citing it for the holding that the purchase of the tax lien certificate “extinguishes a taxpayer’s personal liability for the unpaid taxes” (Corvetti v Fidelity Natl. Tit. Ins. Co. of N.Y., 258 AD2d 32, 34 [1999]; see also Canino v Engelstein, 43 NY2d 922, 924 [1978]).
*780 Such legal fiction has no bearing upon this case as Westshore is not being pursued by the City personally for failure to pay taxes. Rather, here, as in Cargill (44 NY2d at 14), there is deemed to be no outstanding tax delinquency for which West-shore may be held responsible. Westshore purchased the property anew and derived title free of any claim for prior taxes.
Brookmar and Marina additionally contend that when West-shore paid consideration to obtain the foreclosure bid, that sum was a payment of taxes. Such contention is without merit. The sum paid by Westshore merely constituted its purchase price for the property, which was independent of the tax liabilities of the prior owners and the payment of those taxes. As noted above, the extinguishment of the right to redeem terminated any possibility for a prior owner to pay the taxes. Thus, inasmuch as Marina could no longer pay the taxes on the property following the auction sale, Westshore could not, through means of a legal fiction, acquire a right greater than that of its assignor. West-shore’s purchase price for the property, therefore, cannot be deemed to be the payment of the prior owners’ outstanding tax obligation.
Moreover, as discussed above, the sum paid by Westshore was insufficient to fully satisfy all of the tax liens upon the property. While Westshore argues that the City’s own tax records do not show that any real estate taxes for the years in question are due and owing, such argument is unavailing. According to the affirmation of Margaret Donadío, the Tax Lien Ombudsman for the Department of Finance of the City of New York, the account history of the property does not show that, due to the sale of tax liens, there was a payment of taxes. Instead, the account history merely reflects that Westshore, as the purchaser at the foreclosure sale, purchased the property with a clean slate free from the prior foreclosed tax lien, and that it was responsible only for the payment of the $230,879 in current taxes paid by it on December 16, 2004 and those taxes accruing thereafter (see Lee v Farone, 261 App Div 674, 674 [1941], affd 288 NY 517 [1942]). The fact that there is no outstanding tax delinquency with respect to the property for which further collection remedies may be pursued is not tantamount to a payment of taxes.
In order to have standing to challenge a tax assessment of property in a RPTL article 7 tax certiorari proceeding, the petitioner must be “aggrieved” by the assessment (RPTL 704 [1]). A person is “aggrieved” within the meaning of RPTL 704 (1) when its “ ‘pecuniary interests are or may be adversely af *781 fected’ by an assessment” (Matter of Mack, 72 AD2d at 605, quoting People ex rel. Bingham Operating Corp. v Eyrich, 265 App Div 562, 565 [1943]; see also 98 NY Jur 2d, Taxation and Assessment § 396). Thus, to fall within the definition of an “aggrieved” party, one must have paid the taxes challenged as excessive (see Matter of Mack, 72 AD2d at 605).
As discussed above, Westshore, as the purchaser of the property, did not pay and never assumed responsibility for payment of any real property taxes which are the subject of this RPTL article 7 proceeding. Consequently, Westshore cannot claim status as an aggrieved party for the years in question (see RPTL 704 [1]). Westshore, therefore, lacks standing to maintain this RPTL article 7 proceeding, and Brookmar and Marina lack standing to maintain this RPTL article 7 proceeding on West-shore’s behalf. Summary judgment dismissing the petitions must, therefore, be granted (see CPLR 3212 [b]).
Accordingly, respondents’ motion for summary judgment dismissing the petitions with respect to the subject premises is granted.